*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

In re E. R. RUMFORD, Minor.

UNPUBLISHED
May 21, 2019

No. 345809
Wayne Circuit Court
Family Division
LC No. 14-515878-NA

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, ER. Respondent's rights were terminated pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused injury of the child's sibling, and there is reasonable likelihood the child will suffer similarly), MCL 712A.19b(3)(b)(*ii*) (parent had the opportunity to prevent injury to child's sibling, failed to do so, and there is reasonable likelihood the child will suffer similarly), MCL 712A.19b(3)(g) (parent failed to provide proper care and custody), and MCL 712A.19b(3)(j), reasonable likelihood, based on conduct of the parent, that the child will be harmed if returned to parent) after she pleaded no contest to statutory grounds for termination and the court determined that termination was in ER's best interests. We affirm.

On appeal, respondent challenges the trial court's determination that termination of her parental rights was in ER's best interests. Respondent contends that the trial court erred in terminating respondent's parental rights because she and ER share a strong bond and respondent has sought out services to help her be a better parent. We disagree.

This Court reviews for clear error a ruling that termination is in the best interests of a child. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). In applying the clear error standard, " 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *Schadler*, 315 Mich App at 408-409, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

After a statutory ground for termination has been established under MCL 712A.19b(3), a court may terminate a parent's parental rights if it "finds by a preponderance of the evidence that

termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The focus is on the child rather than on the parent throughout the best-interest determination. *Schadler*, 315 Mich App at 411. The trial court is allowed to consider "the whole record," which includes evidence introduced by any party. *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016).

A number of factors may be considered in making a best-interests determination, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (quotation marks omitted). A child's safety and well-being, including the risk of harm a child might face if returned to the parent's care, is also a factor relevant to a best-interest determination. *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011). The primary beneficiary of the best-interest analysis should be the child, and the child's interest in a normal family home predominates over any interest that the parent may have. *Medina*, 317 Mich App at 237-239.

A review of the evidence presented at the best-interest hearings demonstrates that the trial court did not clearly err in concluding that termination of respondent's parental rights was in ER's best interests. ER faces a risk of harm if she is returned to respondent's care, and that risk weighs in favor of terminating respondent's rights. In 2016, another one of respondent's children, AR, died while in respondent's care after being forcefully held down in scalding hot water. In the subsequent termination case for respondent's other children, the presiding judge concluded that respondent either participated in the murder herself or was protecting the person who did it. Respondent's explanation of AR's death, specifically, that he climbed into the tub himself and accidentally turned on the water, was inconsistent with the physical evidence in the previous case. The evidence supported a conclusion that AR was forcibly held down in scalding hot water without splashing the water; it is likely that AR would have climbed out or would have at least splashed around in the water if respondent's version of events were true. That inconsistency supports the prior judge's conclusion. If respondent participated in the murder herself, then ER is certainly not safe with respondent. If respondent is protecting the real culprit, then that indicates that respondent places the well-being of another person ahead of the well-being of her children even in extreme circumstances. Respondent may have a strong bond with ER, but that bond does not predominate over ER's safety. In either circumstance, ER is in danger of harm or even death if she is returned to respondent's care, and that factor weighs strongly in favor of termination. *VanDalen*, 293 Mich App at 141-142.

Additionally, the factors outlined in *White* and *Olive/Metts* also support a conclusion that termination is in ER's best interests. While respondent has taken steps since the last termination case to obtain employment, housing, and therapy for substance abuse, that assistance does not rectify the fact that respondent has not provided complete transparency as to the events of AR's death because it is likely that she either killed AR or helped someone else do it. Yet respondent continues to tell an unbelievable story that AR's death was an accident. That lack of transparency not only places ER in danger, it also reflects poorly on respondent's parenting ability. Respondent has a strong bond with ER, but testimony at the best-interest hearing also demonstrates that ER is "thriving" while in a preadoptive placement with ER's foster family. Thus, ER's need for permanency and stability, and the strong advantages of ER's placement with

the foster family, also demonstrate that termination of respondent's rights is in ER's best interests. *White*, 303 Mich App at 713. Therefore, the evidence presented at the hearing indicates that the trial court did not clearly err in terminating respondent's rights because the evidence demonstrates that ER is not safe while in respondent's care and ER's need for love, stability, and a normal family home provided by the foster family predominates over respondent's interest in maintaining her parental rights.

 Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
